UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LARRY FLOYD,<br>   Plaintiff, | : | CIVIL CASE NO.<br>3:20-CV-00070(JCH) |
| v. | : | |
| FREDERICK DIRGA,<br>MATTHEW BLOOM, and<br>ELLIOT ARROYO,<br>   Defendants. | : | JANUARY 5, 2023 |

**RULING ON PARTIAL MOTION FOR SUMMARY JUDGMENT (DOC. NO. 43)**

**I.     INTRODUCTION**

Plaintiff, Larry Floyd ("Floyd"), brings this action against Middletown, Connecticut, Police Officers Frederick Dirga ("Dirga"), Matthew Bloom ("Bloom"), and Elliot Arroyo ("Arroyo"), under sections 1983 ("section 1983") and 1988 ("section 1988") of title 42 of the United States Code.  Floyd alleges that the defendants used unreasonable force in violation of his Fourth Amendment rights while effecting an arrest on July 7, 2018, and while removing Floyd from his holding cell the next afternoon.

Now before the court is the defendants' Partial Motion for Summary Judgment ("Mot. for Summ. J.") (Doc. No. 43), which Floyd opposes.  See Plaintiff's Opposition to Defendants' Partial Motion for Summary Judgment ("Pl.'s Opp'n") (Doc. No. 44).  For the reasons explained below, the Motion is granted.

1

## II. BACKGROUND

### A. Factual Background[1]

Larry Floyd was sitting on a bench eating pizza when officers approached him on the Middletown Green on July 7, 2018.  See Pl.'s Local Rule 56(a)2 Statement of Additional Material Facts ("Pl.'s 56(a)2 Stmt. of Add'l Facts") ¶ 5 (Doc. No. 44–1); see also Defs.' Local Rule 56(a)1 Statement of Facts ("Defs.' 56(a)1 Stmt.") ¶ 4 (Doc. No. 43–2).  Upon seeing the police, Floyd started walking towards his home across the Green.  See Pl.'s 56(a)2 Stmt. of Add'l Facts ¶¶ 4–5.  He tried to walk around the officers as they approached, but Floyd was quickly surrounded by law enforcement.  Id. ¶ 9.  The officers knocked the pizza out of Floyd's hands before hitting him in the back of the head with a billy club and tackling him from behind.  Id. ¶¶ 7, 9.  Once on the ground, Floyd struggled to breathe through kicks, knees and boots on the back of his head, and a billy club under his throat.  Id. ¶ 12.  Floyd was arrested, thrown into the back of a police car, and transported to the Middletown Police Department.  Id. ¶¶ 13–14; see also Defs.' 56(a)1 Stmt. ¶¶ 4, 6.

Upon arrival at the Police Department, Floyd was placed in a holding cell.  See Pl.'s 56(a)2 Stmt. of Add'l Facts ¶ 15; Defs.' 56(a)1 Stmt. ¶¶ 4, 6.  Floyd remained in the cell overnight, periodically waking up to shout statements to the effect of "what the hell am I doing in here" at the camera pointed in his direction.  Defs.' 56(a)1 Stmt. ¶¶ 11–13.  Around 2:30 PM on July 8, 2018, Floyd began throwing wet toilet paper at the camera in

---

[1] The court draws primarily from the parties' Local Rule 56(a) statements and supporting exhibits in summarizing the material facts, construing those facts in the light most favorable to Floyd.  In violation of Local Rule 56(a), Floyd's Rule 56(a) Statement does not "include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement. . . ."  D. Conn. L. Civ. R. 56(a)2(i).  For ease of reference, the court therefore cites only to the defendants' Rule 56(a)1 Statement where the statement is undisputed.

2

his cell.  Id. ¶ 14.  Floyd eventually hit his target and covered the camera.  Id.  Shortly thereafter, an officer approached Floyd's cell and informed him that he was being moved.  Id. ¶ 15.  After hearing this, Floyd used his blanket to remove the wet toilet paper from the camera.  See Defendant's Exhibit C, Video Footage of Floyd's Cell ("Floyd's Cell Footage") (43–5).  Even with the obstruction removed, the officers insisted on moving Floyd to a new cell.  Id.

Prior to entering his cell, an officer warned Floyd that he would be tased if he gave the officers a hard time.  Defs.' 56(a)1 Stmt. ¶ 17.  This warning was repeated before the officers ordered Floyd to stand up and face the wall.  Id. ¶¶ 18–19.  However, Floyd failed to comply with that order.  Id. ¶ 19.  Floyd pleaded to stay, but officers entered his cell and grabbed him by his wrists.  See Floyd's Cell Footage; see also Defs.' 56(a)1 Stmt. ¶ 20.  The officers pulled Floyd out of the cell—despite his physical and vocal resistance—and dragged him into the hallway.  See Defs.' 56(a)1 Stmt. ¶¶ 20–23.  Floyd was once again warned that he would be tased if he did not comply with the officers.  Id. ¶ 24.  Still, Floyd managed to pull away from the officers and retreat into his cell.  Id. ¶ 25.  Floyd was given one more warning before Officer Dirga fired his taser.  Id. ¶ 26; Pl.'s 56(a)2 Stmt. of Add'l Facts ¶ 17.

After getting tased, Floyd was told repeatedly to get on his stomach or risk further tasing.  Id. ¶ 27.  Floyd did not comply, and the officers entered his cell again to remove him.  Id. ¶ 28.  Floyd grabbed onto his toilet to resist, but an officer punched his arm twice and kicked him to get him to let go.  Id. ¶ 29; Floyd's Cell Footage.  After releasing his grip on the toilet, Floyd was dragged out of his cell.  See Defs.' 56(a)1 Stmt. ¶ 29; Floyd's Cell Footage.

Ultimately, Floyd pled guilty to interfering with an officer for the altercation on the Middletown Green.  See Defs.' 56(a)1 Stmt. ¶ 7.  He was sentenced to eighty-nine days in prison but was released after serving approximately seventy-nine.  Id.; Defendants' Exhibit A, December 8, 2021 Deposition of Larry Floyd at 82 (43–3).

B.   Procedural Background

Floyd filed his initial Complaint against the defendants on January 19, 2021.  See Complaint ("Compl.") (Doc. No. 1).  Floyd's initial Complaint alleged that the defendants used unreasonable force—in violation of his Fourth Amendment rights—in effecting his arrest on the Middletown Green.  See id.  However, on December 8, 2021, Floyd moved to amend the Complaint to include allegations of unreasonable force used by the same three defendants during the July 8, 2018 altercation in his holding cell.  See Motion to Amend the Complaint ("Mot. to Amend") (Doc. No. 22).  Over objection, the court granted Floyd's Motion to Amend the Complaint but directed the defendants to raise any statute of limitations arguments in a dispositive motion.  See Order (ECF No. 27).

The court now considers defendants' Partial Motion for Summary Judgment.  See Mot. for Summ. J.; Memorandum of Law in Support of Partial Motion for Summary Judgment ("Defs.' Mem.") (Doc. No. 43-1); Defendants' Reply to Plaintiff's Opposition to Partial Motion for Summary Judgment ("Defs.' Reply") (Doc. No. 47).  In the Motion, the defendants move for summary judgment as to all claims against Bloom as well as to all claims arising out of the altercation in Floyd's holding cell.  See Mot. for Summ. J. at 1.  Floyd opposes the Motion.  See Pl.'s Opp'n.

### III.     LEGAL STANDARD

A motion for summary judgment may be granted only where the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

### IV.     DISCUSSION

#### A.     Claims Against Bloom Fail as a Matter of Law

The defendants assert that all claims against Bloom fail as a matter of law because the undisputed facts demonstrate that he was not personally involved in—nor was he even present for—Floyd's arrest or the altercation in the holding cell. See Defs.'s Mem. at 3–4; Defs.' 56(a)1 Stmt. ¶ 5; Bloom Affidavit ¶¶ 6–7.  Floyd agrees and avers that "[s]ummary judgment may be granted to [Bloom] without objection." Pl.'s

5

Opp'n at 1. Because there is no genuine dispute of material fact and Floyd does not object to entry of summary judgment, the court grants defendants' Motion as to all claims against Bloom.

> B. Claims Arising from Altercation in the Holding Cell are Barred by the Statute of Limitations

The defendants argue that all claims stemming from the altercation in Floyd's holding cell are time barred. Defs.' Mem. at 5–8. In particular, the defendants aver that the initial Complaint fails to mention any factual allegations after Floyd was transferred to the Police Department, and that Floyd failed to move to amend the Complaint to add such allegations until after the statute of limitations had run. Id. at 6.

Section 1983 does not itself contain a statute of limitations, but rather borrows the state's statute of limitations in personal injury actions. See Lounsbury v. Jeffries, 25 F.3d 131, 133 (2d Cir. 1994). The Second Circuit has held that section 52-557 of the Connecticut General Statutes, which carries a three-year statute of limitations, is the applicable state statute. See id. at 134. This same three-year statute of limitations applies to all section 1983 claims, even though the underlying constitutional violation may differ. See id. at 133. In the case at bar, the altercation in the holding cell occurred on July 8, 2018. Defs.' 56(a)1 Stmt. ¶ 14. However, Floyd did not move to amend the Complaint to add factual allegations arising out of this incident until December 8, 2021, nearly five months after the statute of limitations had run.

> 1. Continuing Course of Conduct Principle Does Not Apply

In support of his Motion to Amend the Complaint, Floyd initially argued that "the identity of the perpetrator of the assault in he [sic] plaintiff's cell and the details of the ensuing assault committed as a part of a continuing course of conduct by the defendant

6

Dirga became apparent during the plaintiff's deposition conducted." Mot. to Amend at 1. Floyd's counsel is correct that the continuing course of conduct principle exists, but he does not articulate how or why that rule should apply to his case. Indeed, "when a wrong sued upon consists of a continuing course of conduct, the statute [of limitations] does not begin to run until that course of conduct is completed." Slainte Investments Ltd. P'ship v. Jeffrey, 142 F. Supp. 3d 239, 258 (D. Conn. 2015) (quoting Giulietti v. Giulietti, 65 Conn. App. 813, 833 (Conn. App. 2001)). This principle has been held to apply to federal claims, including those arising under section 1983. See Doe v. Blake, 809 F. Supp. 1020, 1025 (D. Conn. 1992). However, even if the continuing course of conduct principle applied to this case—which the defendants dispute, see Defs.' Mem. at 7—Floyd points to no conduct that continued into the statutory period, which would be three years after the July 8, 2018 incident in the holding cell because that is when the alleged course of conduct concluded. Thus, the continuing course of conduct doctrine cannot save his claims.

        2.        Holding Cell Claims Do Not Relate Back

In opposing the defendants' Partial Motion for Summary Judgment, Floyd changes tact and asserts that the new allegations are not time barred because they "relate back" to the unreasonable force claims asserted in the timely-filed initial Complaint. See Pl.'s Opp'n at 2. In order for an amendment to relate back, the claims asserted must arise "out of the conduct, transaction or occurrence set out . . . in the original pleading. Fed. R. Civ. P. 15(c)(1)(B). The "central inquiry" under Rule 15 "is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Stevelman v. Alias Rsch. Inc., 174 F.3d 79, 86 (2d Cir. 1999)

(quotation and citation omitted). "For a newly added action to relate back, the basic claim must have arisen out of the conduct set forth in the original pleading." Slayton v. Am. Express Co., 460 F.3d 215, 228 (2d Cir. 2006) (quotation and citation omitted). This means that even when an amendment "tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back." Id. (quotation and citation omitted); see also Pruiss v. Bosse, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) ("An amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged.").

Here, the initial Complaint offers factual allegations pertaining only to Floyd's arrest on the Middletown Green. See Compl. ¶¶ 1–11. As the defendants point out, the initial Complaint raises no allegations as to what may have occurred after Floyd's arrest. See Defs.' Mem. at 5. So, rather than making more specific what has previously been alleged, the amendments lay out a distinct set of facts. Accordingly, the adequate notice demanded by Rule 15 is absent.

In opposing summary judgment, Floyd argues that the amendment asserts a claim that arose out of the conduct or occurrence in the original pleading because "Dirga was the leader of both assaults,[2] both of which occurred during continual police custody prior to the plaintiff's arraignment." Pl.'s Opp'n at 2. However, Floyd cites no case law to support this, nor does he cite to any remarks or circumstances in the record showing that the latter altercation arises out of the incident in the park a day prior. Instead, the altercation in the holding cell involved different conduct, on a different date,

---

[2] Floyd cites no facts in the record to support this claim. See Pl.'s Opp'n at 2. Although Floyd testified that Dirga is the officer who tased him, see Plaintiff's Exhibit 2, March 8, 2022 Deposition of Larry Floyd at 147 (44–3), there is no evidence that Dirga took on a leadership role in either incident.

8

and at a different location than the arrest.  See generally Jefferies v. BCI Burke Company, LLC, 2018 WL 529955, at *3 (D. Conn. Jan. 24, 2018) (discussing examples of the application of the "vaguely defined" limitation within the Second Circuit, and noting that "new legal claims generally relate back if they are based on the facts set out in the original complaint."); see also Gardiner v. McBryde, 2018 WL 6991101, at *5 (D. Kan. Oct. 5, 2018) (determining that because "plaintiff's proposed second excessive-force claim is based on new factual allegations of force on a different date and in a different location than the excessive force allegations set out in his first amended complaint", the second excessive force claim—which arose out of the same period of police custody as the first—does not relate back).

The court concludes that the claims in the Amended Complaint do not relate back to the original pleading.  Thus, all claims arising from the altercation in the holding cell are barred by the statute of limitations, and the court grants summary judgment to the defendants as to these claims.

## V.    CONCLUSION

For the foregoing reasons, defendants' Partial Motion for Summary Judgment (Doc. No. 43) is granted.  Because summary judgment is entered as to all claims against Bloom, he is dismissed from this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of January 2023.

                                               /s/ Janet C. Hall
                                               Janet C. Hall
                                               United States District Judge